LOTTINGER, Judge.
Petitioner, Marie Bell Bernard, filed this suit for damages arising out of an alleged tort committed on her person while riding as a paid passenger on a Baton Rouge Bus. The defendants are the Baton Rouge Bus Co. and Grady A. Covington, the operator of the bus at the time of the alleged incident. The Lower Court gave judgment for defendants, and dismissed petitioner’s suit. Petitioner has appealed.
*457 Petitioner claims that on October 15, 1953, between the hours of three and four o’clock, p. m., she boarded a bus belonging to the Baton Rouge Bus Company as a paid passenger. The bus was very crowded, and many passengers were standing. Petitioner, being a colored female, walked through the standees to the rear section, the colored section, of the bus where there were seats available. She claims that while so walking, she was cursed by a white unknown male passenger and was struck a violent blow to her stomach. During the next few moments she was violently, and in a loud manner, cursed by this unknown male, and was told by him that the Negroes should have their own bus company. After the bus had proceeded a couple of blocks, petitioner noticed that she had taken the wrong bus, and signalled for the driver to let her off at the next corner. The driver did not heed her signal, but kept on, and it was necessary for petitioner to again signal him to stop. Prior to stopping, according to petitioner’s testimony, the white male went to the front of the bus and spoke with the driver. She claims that the bus stopped, and the front door opened to let the unknown white male out and, after a few seconds, the rear door opened to let her out. Upon alighting from the bus, petitioner claims that she was struck several times by the said unknown white male who was holding something of the appearance of iron in his hand. She claims that another male person came out of the bus and told the unknown white male not to hit her with whatever he was holding in his hand, whereupon he put said object in his pocket, picked up a limb off a tree and started striking her with it. She claims that, on one occasion he struck at her with the limb, missed her and struck the side of the bus, which made a loud noise. She claims further that, at about that time, her friends grabbed hold of her and pulled her into the bus, but even while she was being pulled backward, the assailant struck her in the stomach. During all this time the bus remained at a standstill. Both the white unknown male and petitioner got back into the bus, which then resumed its route.
Petitioner claims liability on the bus com- . pany and its driver in failing to protect her while she was riding as a paid passenger, and claims damages in the total sum of $50,097.54. Petitioner is a divorcee, and sues in her own capacity.
The above story by petitioner is not' substantiated by the overwhelming mass of testimony which is in the record. Even petitioner’s own witnesses were not in agreement with her in some respects.
The record shows that the bus was overly crowded at the time. By far the greater number of passengers were school children. Thirteen of these school children testified as witnesses for the defendants. Although the vast majority testified that there was an argument, and strong language, between the white male and petitioner, not one of them saw the unknown male strike petitioner. The majority of these school children saw the entire incident, and stated that if the unknown male had struck petitioner, they would have seen him.
A few of these school children were seated in the front of the bus in the vicinity of the driver. Some of them did not know a thing about the incident, nor did they hear any strong language.
The record as a whole shows that while petitioner was walking to the rear of the bus, evidently the white male hesitated to get out of her way, or had difficulty in doing so, anyhow the petitioner cursed him. Most of the witnesses did not see or hear this, but we might assume that it happened because of the events which followed. Upon signalling for the bus to stop, some of the witnesses testified that the unknown male ran up to the front of the bus and talked to the driver. The driver testified that the male told him that a colored woman had cursed him, and asked the driver if he had any instrument that the male could hit the woman with. The driver told the unknown male that he could not do any such thing on that bus, and advised him to forget the matter. Upon stopping, in response to petitioner’s signal, both the front and rear door opened at the same time. The petitioner left through the rear door,- *458 and the unknown male through the front door. They met midways between the two doors, on the outside of the bus, and commenced to argue and curse in a voice above average, but not unusually loud. Petitioner called the unknown male a strong name, whereupon he picked a branch from a tree, held it in his hand and dared petitioner to call him that name again. At this time the petitioner turned around and walked to the bus and resumed her postition in the bus. The unknown male again went into the bus, through the front door, and the matter was concluded.
Except for petitioner and one of her witnesses, no one saw the unknown male strike her, although the vast majority of the witnesses were just a few feet from the incident and witnessed it in its entirety. -We feel, as did the Lower Court, that the petitioner is the victim of a great imagination.
The record shows conclusively that petitioner was not struck in any manner during the incident. Although there was strong language, the testimony conclusively shows that petitioner was as guilty as was the unknown male, as a matter of fact, the preponderance of the evidence indicates that she started the matter by cursing the unknown male.
Petitioner’s own doctor testified that he examined her shortly after the alleged accident, and found no bruises or marks which would indicate that she had been struck as she alleges.
Due to the crowded condition of the bus, the bus remained stopped for a longer time than usual. The reason for this, according to the testimony of the driver, was that persons were standing in the back door and he was unable to close it. Most of the school children testified that the bus stopped for about one or one and a half minutes. We do not believe this to be unusually long under the circumstances, and the record shows that the bus made its route on schedule.
The bus driver testified that he knew nothing of the incident either on or off the bus until a passenger mentioned it to him later during the trip.
He stated that every seat on the bus was taken and that the aisle of the bus was completely filled; that due to the large number of school children on the bus, it was quite noisy on that particular trip. The driver made a report to his company, and the company investigated the matter. The unknown male who engaged in the argument with petitioner was unable to be found.
The passengers on the bus who were seated directly behind the bus driver did not know anything about the incident. They testified that they heard nothing unusual, that the bus was crowded with children and was noisy from chatter of the crowd. However, none of these witnesses knew anything of the incident except the usual after talk.
The only thing known by the bus driver at the time was that the unknown male asked if the driver had an instrument with which he could hit the petitioner. The driver told the male that he could not do such a thing on his bus, and advised him to forget the matter. He knew nothing of the cursing, or arguing, which took place outside the bus.
The conclusive evidence, as shown by the record, is to the effect that, although there was an argument between the unknown male and the petitioner, no blows were struck, nor did the petitioner suffer any damages. We are further of the opinion that the plaintiff herself provoked the difficulty herein. Since she provoked the difficulty she cannot now be heard to assert a claim for damages. It is well settled that where a person is at fault in provoking a difficulty and sues for damages resulting therefrom, he cannot recover, although the person who inflicts the injuries on him was not fully justified in law in doing so. Johns v. Brinker, 30 La.Ann. 241; Massett v. Keff, 116 La. 1107, 41 So. 330 and Betz v. Teche Lines, La.App., 7 So.2d 656.
*459 Furthermore we do not believe.that the bus driver could have anticipated any difficulty either on or off the bus. As stated hereinabove, in so far as the incident on the bus is concerned, due to the unusual noise being made by the children passengers as well as the number of passengers on the bus, it was impossible for the driver to have heard or seen any of the initial difficulty that might have been commenced on the bus, particularly this is so when-passengers who were seated directly behind the bus driver testified that they knew nothing about the incident. Now with reference to the incident that took place outside of the bus we quote with approval the Lower Court as follows :
“Several of them did see the white man go to thé front and say something to the bus driver and the bus driver admits that he came up there when the bus stopped, or about the time it was getting ■ ready to stop, stating that a colored woman had cursed him back there and he wanted to get hold of something to hit her with. Covington says, 'I told him to forget about any such thing and not to do anything like that.’ He said apparently the man was going to take him at his word and when the bus stopped the man got off. Of course, the bus driver had no knowledge, had no reason to believe that the man was going out to pick a fuss with the plaintiff. I think that the man was entirely in the wrong in getting off the bus and going out to pick a fuss with the plaintiff, but he did it and the bus driver had no anticipation of it. In the Miles case (Charles Miles v. New Orleans Public Service, Inc., 3 La.App. 496) the Court, said that unless the danger is apparent and should have been anticipated the bus driver could not be held responsible, and in that case gave judgment for the defendant, as they did in the Betz case.”
The evidence was overwhelmingly in favor of the. defendant both as to. the number of witnesses, as well as to credibility. The record shows that, just a couple of days after the incident took place, and during the investigation of the incident by the bus company, the petitioner only complained of one blow to her person, which blow was inflicted when she was getting back on the bus. Several witnesses testified to this fact. Upon trial the petitioner increased the number of blows from one to seven or eight and, for good measure, threw in an iron instrument and limb as the instruments used by the unknown male in striking her. Her credibility was attacked not only by her change in story alone, but also by the large -number of disinterested witnesses whose, testimony was in direct conflict with petitioner’s.
For the reasons assigned the judgment of the Lower Court will be affirmed.
Judgment affirmed.